UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| SASHLEY B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 1:20-cv-00176 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Sashley B.[1] filed this action against Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the denial of her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. (*See* Pl.'s Opening Br., Doc. No. 19.)  The Administrative Law Judge ("ALJ") denied her application, finding Ms. B. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 9–24, Doc. No. 16.)  Ms. B. argues the ALJ's decision is unsupported because he improperly "cherry-picked" evidence during the step-three analysis. (Pl.'s Opening Br. 4, Doc. No. 19.)  Because Ms. B. has not met her burden to establish she meets the criteria of

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only. Plaintiff changed her last name since the time of her administrative hearing. (*See* Pl.'s Opening Br. 1 n.1, Doc. No. 19.)  The court refers to her as Sashley B., reflecting the name she filed the case under.

1

any of the listings[2] or to show the ALJ otherwise erred, the court[3] affirms the Commissioner's decision.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). "[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a scintilla." *Id.* at 1154. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (internal quotation marks omitted).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[2] The appeal will be determined on the written memoranda as oral argument is unnecessary. DUCivR 7-1(g).

[3] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 20.)

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual is considered disabled "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In making the disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) the claimant presently engages in substantial gainful activity;

2) the claimant has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) the claimant possesses a residual functional capacity to perform past relevant work; and

5) the claimant possesses a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden, in the first four steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

## PROCEDURAL HISTORY

Ms. B. filed an application for disability insurance benefits in March 2018, alleging disability beginning February 1, 2016. (Tr. 166.) On November 15, 2019, after a hearing, the ALJ found Ms. R. was not disabled. (*Id.* at 9–24.)

At step two of the sequential evaluation, the ALJ determined Ms. B. had the severe impairments of inflammatory arthritis, fibromyalgia, and posttraumatic stress disorder ("PTSD"). (*Id.* at 15.) The ALJ also determined Ms. B. had the following non-severe impairments: degenerative disc disease, lupus, herpes zoster, sleep apnea, anxiety, and depression. (*Id.*) At step three, the ALJ found Ms. B.'s impairments did not meet or equal an impairment listing. (*Id.* at 16–17.) At step four, the ALJ determined Ms. B. had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [S]he can frequently climb ramps and stairs. She can never climb ladders and scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can never be exposed to hazards such as unrestricted heights and dangerous moving machinery. Due to physical pain, she can perform goal-oriented but not assembly line-paced work. Due to mental limitations, she can occasionally interact with co-workers and supervisors.

(*Id.* at 17.) Relying on testimony from a vocational expert, the ALJ found Ms. B. capable of performing past relevant work as an administrative clerk as well as other jobs existing in the national economy. (*Id.* at 21–23.) Therefore, the ALJ found Ms. B. was not disabled. (*Id.* at 24.)

The Appeals Council denied Ms. B.'s request for review, (Tr. 1–6), making the ALJ's decision the final decision of the Commissioner.

DISCUSSION

Ms. B. raises a single claim of error.[4] She argues the ALJ's finding that Ms. B did not have an impairment or combination of impairments which met or medically equaled the severity of one of the listed impairments is unsupported by substantial evidence. (Pl.'s Opening Br. 4, Doc. No. 19.) Ms. B.'s claim fails because she does not establish she meets the criteria for a listing.

The listings at 20 C.F.R. Part 404, Subpart P, Appendix 1, cover medical conditions so debilitating as to warrant an automatic presumption of disability without further consideration of the claimant's RFC or ability to perform past or other work. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). At step three, a claimant has the "burden to present evidence establishing her impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, a claimant must establish his impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085; *see also* 20 C.F.R. § 404.1525. However, a claimant need not identify a specific listing. *See Fisher-Ross*, 431 F.3d at 733 n.3.

In this case, the ALJ reviewed Ms. B.'s impairments under the criteria in listing 14.02 (systemic lupus), 14.09 (inflammatory arthritis), and 12.15 (trauma and stressor-related mental

---

[4] Although Ms. B. also requests a new evaluation of her RFC, (Pl.'s Opening Br. 9, Doc. No. 19), her arguments focus only on the ALJ's determination regarding the listings. Accordingly, the court does not address the RFC issue. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) ("Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal.").

disorders). (Tr. 16.) Because no listing covers fibromyalgia, the ALJ reviewed that impairment in accordance with the requirements of Social Security Regulation 12-2p. (*Id.*) After assessing the listings criteria and the record evidence, the ALJ found Ms. B. "did not have an impairment or combination of impairments that me[ets] or medically equal[s] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Ms. B. does not identify which listing the ALJ incorrectly analyzed. The only finding Ms. B. takes issue with relates to her "ability to adapt or manage" herself. (Pl.'s Opening Br. 5, Doc. No. 19.) Because that standard is only relevant to listing 12.15, the court presumes Ms. B. is challenging the ALJ's finding only as to listing 12.15. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those . . . contentions that have been adequately briefed for our review.").

In addition to other requirements, listing 12.15 requires medical documentation of all the following:

> 1. Exposure to actual or threatened death, serious injury, or violence;
>
> 2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
>
> 3. Avoidance of external reminders of the event;
>
> 4. Disturbance in mood and behavior; and
>
> 5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.15(A). The ALJ did not discuss these requirements or explicitly determine whether Ms. B. satisfied them. But assuming Ms. B. supplied sufficient medical documentation to satisfy this part, listing 12.15 also requires claimants to satisfy the requirements of paragraph B or C. *Id.* To satisfy paragraph B, there must be a finding of "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental

6

functioning:" "[u]nderstand, remember, or apply information," "[i]nteract with others," "[c]oncentrate, persist, or maintain pace," or "[a]dapt or manage oneself." *Id.* § 12.15(B). Alternatively, to satisfy paragraph C, the ALJ must find the claimant's "mental disorder in this listing category is 'serious and persistent;'" such that she has:

> [M]edically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder . . . ; *and*
>
> 2.  Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life."

*Id.* § 12.15(C).

Ms. B. does not argue or demonstrate that she meets the paragraph C criteria. She seems to challenge the paragraph B findings by arguing the ALJ's conclusion that she had no limitations in her ability to adapt or manage herself is not based on substantial evidence. (Pl.'s Opening Br. 4–5, Doc. No. 19.) The ALJ based his finding of no limitations in this area on the following:

> [Ms. B.] reported she is able to take care of pets with the help of friends she lives with. She stated she is able to perform personal care such as dressing, bathing, and grooming with some variations due to her physical impairments. [Ms. B.] is able to prepare simple meals, do some chores, drive, travel in a vehicle, go out alone, shop, and handle finances . . . . [Ms. B.] is also able to attend medical appointments frequently and adapt to new medical providers.

(Tr. 17 (citing *id.* at 217–24).)

Ms. B. argues the ALJ erroneously relied on a function self-report, and no medical evidence. (Pl.'s Opening Br. 4–5, Doc. No. 19.) Further, she claims the ALJ impermissibly cherry-picked evidence from her self-report—citing statements supporting his decision and ignoring statements weighing against his finding. (*Id.* at 5.) According

7

to Ms. B., the ALJ failed to analyze the following statements, all of which weigh against the ALJ's finding regarding Ms. B.'s ability to adapt or manage herself:

- "I'm in pain all day, fatigue, and my flares make it impossible to get out of bed sometimes."  (*Id.* (quoting Tr. 217).)

- "I go for days either sleeping all the time or not sleeping at all. When I can sleep, I have nightmares. When I can't sleep I do not have energy to do daily activities."  (*Id.* (quoting Tr. 218).)

- "On my bad days I need help with buttons, zippers, laces, bras, on and off."  (*Id.* (quoting Tr. 218).)

- "On my bad days, I need help washing my hair. Help in and out of shower."  (*Id.* at 6 (quoting Tr. 218).)

- "I have someone brush and pull back my hair. I wear hats or leave it alone."  (*Id.* (quoting Tr. 218).)

- "I don't shave or I have someone else do it for me."  (*Id.* (quoting Tr. 218).)

- "Sometimes I need help putting the food and drinks to my mouth."  (*Id.* (quoting Tr. 218).)

- "On [my bad] days I need help sitting on the toilet and flushing."  (*Id.* (quoting Tr. 218).)

- "I have troubles relating to others. I get easily overwhelmed and frustrated."  (*Id.* (quoting Tr. 222).)

- "It is very hard for me to handle stress. Sometimes impossible."  (*Id.* (quoting Tr. 223).)

- "I don't handle changes in my routine very well. Sometimes I just shut down and I don't know how to handle changes."  (*Id.* (quoting Tr. 223).)

- "My anxiety rises in the night. I can see and hear[] spirits and people who have passed away."  (*Id.* (quoting Tr. 223).)

Ms. B. notes that while the ALJ found she can "handle finances," she actually reported she "[s]ometimes . . . forgets to pay bills."  (*Id.* (quoting Tr. 17, 221).)  Ms. B. argues the ALJ misconstrued her statement when stating she is "able to prepare 'simple meals.'"  (*Id.* (quoting

8

Tr. 17).)  In reality, she "stated that she was able to prepare frozen meals," where she "used to be able to meal prep for the week and cook fresh foods." (*Id.* (quoting Tr. 219).)  Lastly, the ALJ relied on the fact that Ms. B is "able to 'do some chores,'" but Ms. B. argues she only reported she "can sometimes do laundry and dust" and needed "'counseling to encourage [her]' to complete these tasks." (*Id.* at 7 (quoting Tr. 17, 219).)  Ms. B. argues these variations in her ability to adapt and manage herself go beyond those the ALJ identified. (*Id.* at 6 n.4–6.)  She contends the ALJ made it appear she is higher functioning than reported, by wholly ignoring these portions of her self-report. (*Id.* at 7–8.)

In response, the Commissioner contends the ALJ considered all aspects of Ms. B.'s self-report.  (Def.'s Answer Br. 2, Doc. No. 23.)  And even if he did not, the Commissioner argues the decision should be affirmed because Ms. B. has not shown she otherwise meets the criteria of a listing.  (*Id.*)  According to the Commissioner, Ms. B. did not establish her inability to adapt and manage herself rises to an extreme level—which she would need to show to meet any of the mental-health listings, where she has no "marked limitation" in any other category.  (*Id.*)  The Commissioner concedes the ALJ's statements regarding the self-report are "very general," but contends they are not misrepresentations.  (*Id.* at 11.)  And the Commissioner argues that even if the ALJ had mischaracterized Ms. B.'s statements about her ability to adapt or manage herself, it would be irrelevant to the mental-health criteria findings because Ms. B.'s statements pertain to her physical functioning, not her mental functioning.[5]  (*Id.* at 12–13.)  Finally, the Commissioner maintains any error is harmless because the ALJ properly accounted for Ms. B.'s physical impairments in his RFC evaluation.  (*Id.*)

---

[5] The Commissioner contends Ms. B.'s only statement regarding her mental functioning was as follows: "PTSD limit[ed] me to work because of my heightened reactions, anxiety, depression, hostility, and social isolation." (Def.'s Answer Br. 12, Doc. No. 23 (quoting Tr. 217).)

9

Ms. B. relies on *Bryant v. Commissioner*, 753 F. App'x 637 (10th Cir. 2018) (unpublished), in support of her argument that the ALJ erroneously failed to consider medical records supporting her objective complaints.[6] (Pl.'s Opening Br. 8, Doc. No. 19.) In *Bryant*, the Tenth Circuit found the ALJ applied the incorrect standard in rejecting a doctor's opinions, noting "an ALJ may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Id.* at 640 (internal quotation marks omitted). The Tenth Circuit found the ALJ engaged in "impermissible cherry-picking" by relying on portions of medical records supporting her finding of non-disability, while ignoring "other portions of the same reports that confirmed" and supported the doctor's conclusions. *Id.* at 641. The ALJ also erroneously failed to consider other medical evidence supporting the doctor's opinions she

---

[6] Ms. B. provides the following examples:
- "RA and fibromyalgia: can't get out of bed by herself. Doesn't want to eat or drink because she can't go to the bathroom without help." (Pl.'s Opening Br. 7, Doc. No. 19 (quoting Tr. 264).)
- "She can't leave her house on her own." (*Id.* (quoting Tr. 265).)
- "[B], SASHLEY J is a 28 year old F with history of rheumatoid arthritis, lupus, Sjogren's syndrome and fibromyalgia admitted from Women's Clinic with severe uncontrolled pain and inability to care for herself at home." (*Id.* (quoting Tr. 624).)
- "The pain progressed to the point that she was unable to walk and care for herself independently at home. She presented to Women's Clinic for an acute visit and with her inability to perform even ADL's, was admitted to internal medicine for optimization of her medication regimen." (*Id.* (quoting Tr. 624).)
- "Big issue for her is fatigue. She has no energy to get out of bed and has trouble with ADL's. She has trouble with showers for example." (*Id.* (quoting Tr. 821).)
- "On April 25, 2018, Grace H. Belliston, APRN, BC, opined that Plaintiff had a 'poor' ability 'to adapt to stressful circumstances in work or work-like settings where failure to adapt results in repeated episodes of deterioration or decompensation which cause the patient to withdraw or to experience an exacerbation of symptoms." (*Id.* at 7–8 (quoting Tr. 1454).)

But Ms. B. does not explain how these record excerpts establish the ALJ erred in his paragraph B analysis or that it is otherwise unsupported by substantial evidence.

rejected.  *Id.* at 642.  The Tenth Circuit concluded this was reversible error because the ALJ "may not pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence . . . or mischaracterize or downplay evidence to support her findings."  *Id.* at 641 (internal quotation marks omitted).

Unlike in *Bryant*, Ms. B. does not argue the ALJ used the wrong legal standards to reject a doctor's opinion.  She argues only that the ALJ erred at step three of the sequential evaluation by relying on portions of her self-report to the exclusion of others.  (*See, e.g.*, Pl.'s Opening Br. 7, Doc. No. 19.)  *Bryant* does not speak to "cherry-picking" in the context of an individual's subjective symptomatic complaints, particularly where an ALJ's findings have other record support.  Here, Ms. B.'s arguments fail because (1) even assuming the ALJ "cherry-picked" statements from Ms. B.'s self-report, Ms. B. has failed to show his decision is unsupported by substantial evidence, in light of the other medical evidence supporting his conclusions, and (2) Ms. B. has failed to show how she meets the criteria of listing 12.15, where she complains only of the ALJ's finding regarding her ability to adapt and manage herself.

First, there is substantial record evidence supporting the ALJ's reliance on particular statements from Ms. B.'s self-report and his rejection of others.  Ms. B. points to only one medical record supportive of her position, discussing mental limitations: the opinion of Grace Belliston.  (*Id.* at 7–8 (citing Tr. 1454).) ) Ms. Belliston opined Ms. B. had a "'poor' ability to adapt to stressful circumstances in work or work-like settings where failure to adapt results in episodes of deterioration or decompensation which cause the patient to withdraw or to experience an exacerbation of symptoms."  (*Id.* (quoting Tr. 1454).)  But the ALJ properly rejected Ms. Belliston's opinion, finding it "unpersuasive," because she "did not support the opinions with objective testing or signs," and relied upon the "VA disability rating," which the ALJ found irrelevant.  (Tr. 21.)  And other evidence in the record shows Ms. B.'s mental-health

11

symptoms were consistent with the functional limitations found by the ALJ.  For instance, some examinations showed relatively decent functioning.  (*Id.* at 520.)  At the time of the hearing, Ms. B. was not taking mental-health medication or participating in treatment.  (*Id.* at 54.)  And upon review of the medical evidence, Dr. Raps and Dr. Helmer found Ms. B. had no limitations in her ability to adapt or manage herself.  (*Id.* at 71, 85.)  Considering the whole record, the ALJ found Ms. B.'s statements not entirely consistent with the record evidence.  (*Id.* at 18.)  Ms. B. provides no basis for finding error in the ALJ's conclusions or approach, and his conclusions are supported by substantial evidence.

Where Ms. B. complains only of the ALJ's finding regarding her ability to adapt and manage herself, she has failed to show she meets the criteria in listing 12.15.  For instance, Ms. B. does not argue the statements the ALJ allegedly ignored would establish an "extreme limitation" in the category of adapting or managing herself.  Nor does she argue it would establish she had marked limitations in any of the other areas of functioning under listing 12.15.  *See* 20 C.F.R. § 404, subpt. P, App. 1 § 12.15(B).  In other words, even if the ALJ erred in his evaluation of her self-report, Ms. B. has not shown she otherwise meets the listing requirements.  Notably, most of the statements Ms. B. relies on relate to her physical limitations (such as her need for help with physical functioning, on bad days), not her mental limitations.  (*See* Pl.'s Opening Br. 6–7, Doc. No. 19.)  But the category of "managing oneself" pertains to mental functioning: the ability "to regulate emotions, control behavior, and maintain well-being in a work setting."  20 C.F.R. § 404, subpt. P, App. 1 § 12.00(E)(4).  This mental functioning category does not include physical limitations.[7]

---

[7] One doctor noted Ms. B's mood "is likely contributing to the severe pain and improving it will give her a better chance of feeling better." (Pl.'s Opening Br. 5 n.3, Doc. No. 19 (quoting Tr.

In short, Ms. B. has not met her burden to establish she meets a listing, nor has she shown the ALJ erred in his analysis or consideration of the evidence or that his opinion is unsupported by substantial evidence. Accordingly, the ALJ's decision must be affirmed.

CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 25th day of March, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

625).) But Ms. B. does not provide legal authority supporting the idea that an ALJ must consider physical limitations when analyzing mental functioning.